**TRAILER MARINE TRANSPORT CORPORATION, Plaintiff, Appellant,**

v.

**Carmen M. RIVERA–VAZQUEZ, etc., et al., Defendants, Appellees.**

No. 90–2171.

United States Court of Appeals, First Circuit.

Heard April 4, 1991.

Decided April 29, 1991.

Nicolas Jimenez with whom Jimenez, Graffam & Lausell was on brief, San Juan, P.R. for plaintiff, appellant.

Carlos Del Valle Cruz with whom Hector Rivera Cruz, Secretary of Justice, San Juan, P.R., Jorge E. Perez Diaz, Sol. Gen., Guaynabo, P.R., and Ramirez & Ramirez were on brief, Hato Rey, P.R. for defendants, appellees.

Before CAMPBELL, SELYA and CYR, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Trailer Marine Transport Corporation (TMT) is a common carrier by water, engaged in transporting goods to and from ports in the continental United States and Puerto Rico, among other places. TMT filed a complaint in the United States District Court for the District of Puerto Rico, alleging that a fee assessed by the Automobile Accident Compensation Administration of Puerto Rico ("AACA") violated TMT's constitutional rights under the Equal Protection and Commerce Clauses of the United States Constitution. The district court, 749 F.Supp. 376, declined to exercise jurisdiction and dismissed the complaint, citing the strong local interest in the administration of the no-fault insurance scheme. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The Supreme Court has admonished, however, that " 'abstention from the exercise of federal jurisdiction is the exception, not the rule,' " *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). Finding that *Burford* abstention is not warranted in the circumstances of this case, we vacate and remand.

## I.

Puerto Rico's Automobile Accident Social Protection Act created a compulsory, no-fault insurance scheme for the compensation of automobile accident victims. 9 L.P. R.A. §§ 2051–2065 (Supp.1988). As the entity charged with administering the program, AACA is empowered under the Act to establish a yearly premium, subject to the approval of the Commissioner of Insurance. The premium has been a flat thirty-five dollars per year since 1974 and applies

to all motor vehicles operating in Puerto Rico. Payment is made at the time of registration or of renewal of an owner's license. Although trailers were apparently covered by the statute prior to 1990,[1] fees were not being collected for trailers entering Puerto Rico on a temporary basis.

On February 9, 1990, the legislature enacted Law Number 26 in order to recover premiums not being paid by operators of temporary trailers. The amendment provides for the AACA Board of Directors to establish a reduced premium for temporary trailers, which the owner could opt to pay in lieu of the regular annual premium. The AACA Board established a special premium of fifteen dollars for temporary trailers.

While applicable generally to all trailers entering Puerto Rico on a temporary basis, the fee scheme has had particular economic effect on TMT because of TMT's unique method of loading and unloading cargo from its vessels. Most shipping firms use a system known as "lift-on-lift-off" or "LOLO." In a LOLO vessel, containers are stacked inside the vessel's container holds. At the port of origin, the container coupled to a chassis is brought alongside the vessel, and a large shore-based crane picks up the container, lifts it from the chassis, and deposits it inside the container hold. At the port of San Juan, another large crane lifts the container from the hold and lowers it onto a chassis on shore. Shippers who utilize the LOLO method maintain fleets of chassis and tractors in Puerto Rico for transporting the containers to local destinations once they are unloaded.

Unlike its competitors, TMT uses a method of loading and unloading known as "roll-on, roll-off" or "RORO." With the RORO method, the containers are coupled to chassis, forming trailers, and the trailers are rolled onto sea-going barges. These trailers are then transported on the RORO barges to the port of San Juan, where they are rolled off the barges into a marshalling yard on shore. Because TMT carries complete trailers, not containers, it maintains no permanent fleet of chassis in Puerto Rico. Each newly arrived container becomes a temporary trailer, and, in order to comply with the insurance regulations, TMT must pay the fifteen dollar premium for each trailer. Its competitors, on the other hand, pay the annual thirty-five dollar fee for each chassis they maintain permanently in Puerto Rico, irrespective of the number of containers loaded onto those chassis and transported in the course of the year.

In its complaint, TMT alleges that Law 26 and its implementation by AACA violate TMT's rights under the Equal Protection Clause and the Commerce Clause of the United States Constitution. Although acknowledging that TMT's complaint is cast in constitutional terms, the district court held that, in effect, TMT is challenging the manner in which the statute is implemented by the AACA Board of Directors. The district court pointed to TMT's statement in its complaint that it would "have no quarrel with the challenged premium if the defendants fix a yearly premium on each trailer plaintiff introduces into Puerto Rico which is equivalent to the premium fixed against its competitors in proportion to the degree that each carrier's trailers utilize Puerto Rico's highways and other resources." The district court concluded that, to the extent that TMT is challenging the rate established for temporary trailers, the exercise of jurisdiction by the district court would unduly interfere in the regulatory scheme established by the legislature of the commonwealth. The court thus concluded that abstention was proper under *Burford*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

## II.

Despite federal courts' "virtually unflagging" obligation to adjudicate claims within

---

1. 9 L.P.R.A. § 2052(4) reads:
   Motor vehicles—means any vehicles, *including trailers,* designed to operate on public highways propelled by power other than muscular, which type of vehicle is authorized to travel on the public highways by the Department of Transportation and Public Works by issuing a motion license to it.
   (Emphasis supplied).

their jurisdiction, *Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988), the Supreme Court has defined narrow areas in which abstention is appropriate. One such area, known as *Burford* abstention, is implicated when the exercise of jurisdiction by the federal court risks "turning the federal court into a forum that will effectively decide a host of regulatory matters, to the point where the presence of the federal court ... makes it significantly more difficult for the state to operate its regulatory system." *Bath Memorial Hosp. v. Maine Health Care Fin. Comm'n,* 853 F.2d 1007 (1st Cir.1988).

The Supreme Court most recently addressed the *Burford* doctrine in *New Orleans Public Service, Inc. v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (hereinafter *NOPSI*). In *NOPSI,* New Orleans Public Service challenged the local ratemaking body's disallowance of certain costs associated with a nuclear power venture, arguing that the Council's decision was preempted by federal law. The Supreme Court determined that preemption was not appropriate and emphasized that *"[Burford]* does not require abstention whenever there exists [a complex administrative] process or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *NOPSI,* 109 S.Ct. at 2514 (citation omitted). Finding abstention inappropriate, the Court stressed that,

> no inquiry beyond the four corners of the Council's retail rate order is needed to determine whether it is facially preempted by FERC's allocative decree.... Such an inquiry would not unduly intrude into the processes of state government or undermine the State's ability to maintain desired uniformity.

*Id.* at 2515. Although acknowledging that the exercise of federal jurisdiction might result in an injunction against the enforcement of the Council's order, the Court noted " 'there is ... no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy.' " *Id.* (quoting *Zablocki v. Redhail,* 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 677 n. 5, 54 L.Ed.2d 618 (1978)).

Our cases have emphasized these same considerations in applying the *Burford* doctrine. For example, in *Allstate Insurance Co. v. Sabbagh,* 603 F.2d 228 (1st Cir.1979), we noted, as a factor militating against abstention, that the plaintiff was challenging the entire rate schedule as unconstitutional rather than attacking the state commission's exercise of discretion with respect to a few particulars of the regulatory scheme. *Id.* at 232. Nevertheless, we found abstention appropriate in light of the legislature's concentration of review of all regulatory decisions in one court—the Massachusetts Supreme Judicial Court. *Id.* In *Bath Memorial,* we noted that "[t]he plaintiffs do not seek individualized review of fact- (or cost-) specific regulatory decision making. To the contrary, they attack the statute on its face." 853 F.2d at 1014. Finding the risk of interference "no greater than those present whenever a federal court decides whether a state regulatory statute is constitutional," *id.* at 1015, we concluded that abstention was inappropriate.

In this case, the district court was correct that TMT's statement that it would not object to a "premium fixed on *any* rational basis" suggests a challenge to the amount of the fee established by AACA. Nevertheless, the thrust of TMT's objection goes more to the basis established by the legislature for the temporary trailer fee than to the level of the fee itself. In other words, TMT challenges the constitutionality of a scheme under which a separate fee is charged each time a temporary trailer enters Puerto Rico, as opposed to some alternative basis more closely related to the use of the roadways on the island.

TMT alleges that this fee structure violates the Equal Protection Clause by discriminating against shippers utilizing a RORO system. Of course, under well-established principles of equal protection analysis, the fee scheme need only survive rational basis review. *See, e.g., Hodel v. Indiana,* 452 U.S. 314, 331, 101 S.Ct. 2376, 2386, 69 L.Ed.2d 40 (1981) ("Social and economic legislation that does not employ suspect classifications or impinge on funda-

mental rights must be upheld ... when the means are rationally related to a legitimate government purpose."). The district court can conduct this rational basis review without extensive inquiry into the factual basis of the fee structure. Similarly, with respect to TMT's Commerce Clause challenge, the district court will be able to assess whether the fee, although nondiscriminatory on its face, imposes economic burdens on interstate enterprises which are not imposed on local competitors, *see Robbins v. Shelby County Taxing Dist.*, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694 (1887), or in some other way impermissibly burdens interstate commerce.[2]

Unlike *Sabbagh*, in which review of the rate schedule "would inevitably involve detailed factual analysis of the bases of the Commissioner's decision," 603 F.2d at 233, the district court here will be able to determine the constitutionality of the statute and AACA's implementation without inquiring beyond the statute and the implementation procedure themselves. *See NOPSI*, 109 S.Ct. at 2515. Review of TMT's constitutional claims will not "unduly intrude into the processes of state government or undermine the state's ability to maintain desired uniformity." *Id.* In short, this is not the type of case in which "excessive federal court intervention unnecessarily threaten[s] to impede significantly the ongoing administration of a state regulatory system." *Bath Memorial*, 853 F.2d at 1013. Abstention is therefore unwarranted.

### III.

For the foregoing reasons, we conclude that this case does not fall within the narrow *Burford* exception to federal courts' obligation to adjudicate claims within their jurisdiction.

The judgment of the district court is therefore vacated, and the case is remanded for further proceedings not inconsistent herewith. Costs to appellant.

*So ordered.*

---

2. In characterizing the nature of appellant's constitutional claims, we do not in any way mean to suggest that they are necessarily valid. As they have yet to be passed upon by the district court, we simply do not reach the question of their merit or lack thereof.