WAL–MART STORES, INC.,
et al., Plaintiffs,

v.

Anabelle RODRIGUEZ, in her official capacity as Secretary of Justice of the Commonwealth of Puerto Rico Defendant.

No. CIV.02–2778 PG.

United States District Court,
D. Puerto Rico.

Jan. 6, 2003.

Ruben T. Nigaglioni, Raul M. Arias–Marxuach, Veronica Ferraiuoli–Hornedo, McConnell Valdes, San Juan, PR, for Wal–Mart Stores, Inc, Wal–Mart Puerto Rico, Inc., Supermercados Amigo, Inc., plaintiffs.

Carlos Del–Valle–Cruz, Department of Justice, Federal Litigation Division, San Juan, PR, for Anabelle Rodriguez, Anabelle Rodriguez, in her Personal and Official Capacity as Secretary of Justice of the Commonwealth of Puerto Rico, defendant.

### OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Plaintiffs Wal–Mat Stores, Inc., Wal–Mart Puerto Rico, Inc., and Supermercados Amigo, Inc. filed this suit on December 6, 2002, under 42 U.S.C. § 1983, for violations of their rights under the Commerce Clause, the Equal Protection Clause, and the Due Process Clause. (Pls.' Compl., Docket No. 1). Defendant Anabelle Rodríguez, Secretary of Justice of the Commonwealth of Puerto Rico (the "Secretary") filed her "Motion to Dismiss on *Burford* Abstention Grounds" on December 24, 2002 (Def.'s Mot. Dismiss, Docket No. 28). Plaintiffs submitted their "Opposition to Motion to Dismiss on *Burford* Abstention Grounds" on December 26, 2002. (Def.'s Opp'n Mot. Dismiss, Docket No. 29). Having considered these motions, Defendant's Motion to Dismiss is **DENIED**.

## FACTUAL BACKGROUND

The factual background of this suit is extensive, and it has been adequately and fully stated in our Opinion and Order from December 17, 2002, denying Defendant's Motion to Dismiss for Lack of Jurisdiction, (Op. & Order, Docket No. 22) (hereinafter "Op. & Order II"), and our Opinion and Order from December 26, 2002, granting a preliminary injunction against the Defendant, (Op. & Order, Docket No. 30) (hereinafter "Op. & Order III"). It suffices to say that this suit arises from the acquisition of Supermercados Amigo ("Amigo") by Wal–Mart. This transaction took place on December 5, 2002, after months of negotiations with the Federal Trade Commission ("FTC") and the Department of Justice of the Commonwealth of Puerto Rico ("PRDOJ"). The FTC approved the transaction pending the divestiture of four supermarket stores owned by Amigo. On the day the closing of the transaction was announced, the Secretary issued a press release announcing the imminent filing of a complaint in state court requesting injunctive relief against the Plaintiffs for their failure to consent to certain conditions she attempted to impose on the merger.

Plaintiffs filed this action for injunctive relief under 42 U.S.C. § 1983 against the Secretary alleging that in the course of the negotiations between them, and through the conditions that the Secretary attempted to impose upon Plaintiffs, they were deprived of their rights under the Commerce Clause, the Equal Protection Clause, and the Due Process Clause. This Court has already granted a Temporary Restraining Order prohibiting Defendant from "commencing and/or carrying forward any legal proceedings against Plaintiffs," (Op. & Order, Docket No. 9, at 12) (hereinafter "Op. & Order I"), and denied Defendant's "Motion to Dismiss for Lack of Jurisdiction" under the Younger abstention doctrine, (Op. & Order II). On December 26, 2002, the Court issued a preliminary injunction prohibiting the Defendant "her lawyers, agents, employees, or any other person acting in concert with her" from thwarting, impeding or interfering with the acquisition of Supermercados Amigo by Wal–Mart and the divestiture by Wal–Mart of four Amigo stores to Supermercados Máximo, Inc. (Op. & Order III at 54).

In their latest motion questioning this Court's jurisdiction, Defendant requests that this case be dismissed on the basis of the *Burford* abstention doctrine. (Def.'s Mot. Dismiss at 1–2). Defendant argues that the Puerto Rico Department of Justice's request for injunctive relief in state court under Puerto Rico Law 77, 10 P.R. Laws Ann. § 261–276, constitutes a policy-making process. (Def.'s Mot. Dismiss at 8–9). Thus, in seeking to enjoin Wal–Mart's acquisition of Supermercados Amigo the Secretary is setting forth "the parameters of the extremely important and purely autochtonous [sic] policy concerns that the Commonwealth anti-trust procedures provide." (Def.'s Mot. Dismiss at 3). Since, according to the Defendant, the *Buford* doctrine "has not been limited to situations where the State has an extremely centralized and detailed regulatory structure," the Secretary's legal proceeding against Wal–Mart in state court qualifies as an "administrative action" under *Burford*. (Def.'s Mot. Dismiss at 3).

Defendant further contends that enjoining her from seeking an injunction in state court would be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." (Def.'s Mot. Dismiss at 8). The Plaintiffs, she argues, "seek individualized review of fact-specific regulatory decision-making" that would threaten the Secretary's ability to implement the Government of Puerto

Rico's public policy. (Def.'s Mot. Dismiss at 11). Enjoining the Secretary from seeking to enjoin the Wal–Mart–Amigo transaction would create this "institutional threat" and would "blatantly disrupt the State's attempt to ensure uniformity in the treatment of an essentially local problem." (Def.'s Mot. Dismiss at 12).

Plaintiffs oppose dismissal on two grounds. First, they argue that Defendant had waived their *Burford* abstention defense for failing to raise it in a timely manner. (Pls.' Opp'n Mot. Dismiss at 4–5). Second, they claim that abstention was inapplicable because the case involved no questions of state law—the "constitutional challenges at issue do not require extensive inquiry into either the factual basis of the Defendant's local case complaint or into the 'intricacies' of Act 77." (Pls.' Opp'n Mot. Dismiss at 7). They also contend that *Burford* abstention is inappropriate because Puerto Rico Law 77 does not provide "a specialized or concentrated forum, and merely limits itself to authorizing the Defendant to file actions in the Court of First Instance, a court of general jurisdiction." (Pls.' Opp'n Mot. Dismiss at 8).

## DISCUSSION

We start by reiterating, like we did in our December 17, 2002, Opinion and Order, that we cannot deny plaintiffs their right to choose to be before this Court when the choice is there. *See Willcox v. Consol. Gas Co.*, 212 U.S. 19, 40, 29 S.Ct. 192, 53 L.Ed. 382 (1909). Despite this " 'virtually unflagging' obligation to adjudicate claims within their jurisdiction, the Supreme Court has defined narrow areas in which abstention is appropriate." *Trailer Marine Transp. Corp. v. Rivera–Vazquez*, 931 F.2d 961, 962–63 (1st Cir. 1991) (citing *Deakins v. Monaghan*, 484 U.S. 193, 203, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988)). Abstention remains the ex-

ception, however, not the rule. *See Bath Mem'l Hosp. v. Maine Health Care Fin. Comm'n*, 853 F.2d 1007, 1013 (1st Cir. 1988).

The Court turns today to one modality of the abstention doctrine: *Burford* abstention. This doctrine was initially applied in cases involving complex administrative proceedings and unclear state law, *see Burford v. Sun Oil Co.*, 319 U.S. 315, 327–28, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and those dealing with "predominantly local factors" and adequate state regulatory processes to review claims, *see Alabama Pub. Serv. Comm'n v. S. Ry.*, 341 U.S. 341, 349, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). The Supreme Court clarified the reach of this doctrine and declared that federal courts should abstain from interfering with state administrative procedures and/or orders when (1) "there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar' "; or (2) "where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' " *New Orleans Pub. Serv., Inc. (NOPSI) v. New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

*Burford* abstention, then, seeks to "prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative solution." *Pub. Serv. Co. of New Hampshire v. Patch*, 167 F.3d 15, 24 (1st Cir.1998). It does not apply *per se* every time there is a complex state administrative proceeding involving state public poli-

cy. Neither does it apply every time there is a "potential for conflict" with the "state regulatory law or policy." *NOPSI*, 491 U.S. at 362, 109 S.Ct. 2506; *accord Zablocki v. Redhail*, 434 U.S. 374, 380, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) ("And there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy."). Federal courts should not abstain under the *Burford* doctrine when there are "predominating federal issues that do not require resolution of doubtful questions of law and policy." *Patch*, 167 F.3d at 24.

■ The Court is not convinced that, as alleged by the Secretary of Justice, Puerto Rico's antitrust laws provide "a unified method for the formation of policy and determination of cases by the Secretary of Justice and the Commonwealth's Courts," (Def.'s Mot. Dismiss at 9). Even if the proceedings by the Secretary of Justice qualify as an administrative proceeding for purposes of *Burford* abstention, however, none of the other required considerations are present in this case. First, the claims before this Court do not involve "predominantly local factors." The review under the antitrust laws of a proposed merger is seldom wholly local in nature. Even less of a "predominantly local nature" are the claims that the Secretary deprived Plaintiffs of the rights under the Commerce Clause. As the Plaintiffs point out in their Opposition, "the federal interests at issue here, including the Commerce Clause's interest in fostering economic integration and preventing local interference with the flow of the nation's commerce, outweigh any 'competing concern of the independence of State action.'" (Pls.' Opp. Mot. Dismiss at 2). Thus, this case is distinguished from *Burford*, where "the constitutional challenge was of minimal federal importance, involving solely whether the

commission had properly applied Texas' complex oil and gas conservation regulations." *NOPSI*, 491 U.S. at 360, 109 S.Ct. 2506. Here, we are not concerned with whether Wal–Mart's acquisition of Supermercados Amigo violates Puerto Rico antitrust law. We focus, instead, on *federal* constitutional issues: whether the requirement of local purchases violates the Commerce Clause, and whether the Secretary's actions deprived Plaintiffs of their rights to equal protection and due process.

Second, the case at hand does not require resolution of doubtful questions of state law. Whether the Secretary deprived the Plaintiffs' of their constitutional rights hinges not on the wisdom or peculiarities of Puerto Rico antitrust law, but on the lawfulness, under the United States Constitution, of the Secretary's actions. Simply put, to determine whether the Secretary violated the Commerce Clause, or engaged in selective and/or vindictive prosecution in violation of due process, we rely on federal—not Puerto Rico—constitutional law. Moreover, we have no need to decide issues of Puerto Rico antitrust law. As in *NOPSI*, "the present case does not involve a state-law claim, nor even an assertion that the federal claims are 'in any way entangled in a skein of state law that must be untangled before the federal case can proceed.'" 491 U.S. at 361, 109 S.Ct. 2506 (citing *McNeese v. Bd. of Educ. for Cmty. Unit School Dist. 187, Cahokia*, 373 U.S. 668, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963)).

■ Third, the Court is not attempting to "bypass" Puerto Rico's administrative procedures or institute parallel administrative proceedings. Claims that an administrative order or decision violates the Constitution or is preempted by federal law are not subject to *Burford* abstention as long as the federal issues predominate and do not require resolution of "doubtful

questions of law and policy," *Patch* 167 F.3d at 24. Thus, in *Patch* the First Circuit held that *Burford* abstention was "not even arguable" to the extent that the administrative order at issue was claimed to violate the Contracts Clause. *Id.* The First Circuit in *Trailer Marine Transport Corp. v. Rivera–Vazquez* held that abstention was improper in a challenge under the Commerce Clause to a fee scheme implemented by an administrative board because the district court could determine the constitutional validity of its *implementation* "without inquiring beyond the statute and the implementation procedure itself." 931 F.2d 961, 964 (1st Cir.1991). Likewise, determining whether the Secretary's enforcement of the antitrust laws violated the Plaintiffs' constitutional rights does not require inquiring beyond the statute and the nature of the enforcement and negotiations.

Contrary to Defendant's contention, Plaintiffs in this case do not seek "individualized review of fact-specific regulatory decision-making." (Def.'s Mot. Dismiss at 12). Plaintiffs may not be challenging the constitutionality—on its face—of a state statute, but neither are they asking the Court to review a fact-specific administrative decision like that in *Burford* and *Alabama Public Service Commission.* As the First Circuit explained in *Bath Memorial Hospital v. Maine Health Care Finance Commission*—one of the cases relied by Defendant—in *Burford* the district court was asked to decided entitlements under state law, and in *Alabama Public Service Commission* it was confronted with a "special claim" that was "dressed in constitutional clothing." 853 F.2d 1007, 1013–14 (1st Cir.1988). The claims before this Court are neither special claims "dressed in constitutional clothing," nor matters of state law. They are traditional constitutional challenges to state action, and, as such, pose no threat of creating a "parallel

regulatory review institution," *Bath Memorial,* 853 F.2d at 1015.

Defendant also errs when claiming that an injunction against the Secretary would create an "institutional threat" and that *Burford* "commands that any affected party concerned with the legitimacy of such state policy decisions, be directed to those state proceedings entrust with the responsibility of formulating the boundaries of these important policies . . . ." (Def.'s Mot. Dismiss at 12). First, that this case may result in an injunction against the Secretary's enforcement actions does not alter our *Burford* analysis. *See NOPSI,* 491 U.S. at 363, 109 S.Ct. 2506 ("It may, of course, result in an injunction against enforcement of the rate order, but 'there is . . . no doctrine requiring abstention merely because resolution of a federal question may result in overturning of a state policy.' ") (citing *Zablocki,* 434 U.S. at 380 n. 5, 98 S.Ct. 673 (1978)). Second, nothing in the Supreme Court's *Burford* abstention jurisprudence suggests that parties concerned with the *constitutional* validity of an administrative agency's action must seek their relief within the administrative framework. *NOPSI* contains no such indication, and *Alabama Public Service Commission* involved a claim based on "predominantly local factors" and a special claim dressed as a constitutional challenge. *See Bath Memorial,* 853 F.2d at 1014; *see also* Erwin Chemerinsky, *Federal Jurisdiction* 757 (3d ed.1999) (arguing that the Supreme Court "has given no indication" that it intends to "justify abstention whenever there is a federal constitutional challenge to a state administrative decision that also could be reviewed by in state court") As Professor Chemerinsky has suggested, this would create an "exhaustion requirement" that would "extinguish federal court review in a large number of cases and conflict with 42 U.S.C. § 1983,

which imposes no requirement for exhausting state remedies before the initiation of federal court proceedings." Chemerinsky, *supra,* at 756–57.

Finding that there is neither an issue of unclear state law to be resolved nor a threat that this Court would constitute a parallel administrative forum in conflict with Puerto Rico's own forums, Defendant's Motion to Dismiss on *Burford* abstention grounds is **DENIED.**

**IT IS SO ORDERED.**