**SPRINTCOM, INC., Plaintiff**

v.

**PUERTO RICO REGULATIONS AND PERMITS ADMINISTRATION, el al., Defendants.**

Civil No. 07–1026 (JP).

United States District Court, D. Puerto Rico.

May 22, 2007.

Miguel J. Rodríguez–Marxuach, Esq., Rodríguez–Marxuach & Gierbolini, P.S.C., San Juan, PR, for Plaintiff.

José Enrico Valenzuela–Alvarado, Esq., Department of Justice, San Juan, PR, for Defendants.

## OPINION AND ORDER

PIERAS, Senior District Judge.

The Court has before it Defendant Puerto Rico Regulations and Permits Administration's ("Defendant" or "ARPE") Motion

to Dismiss (**No. 9**) and Plaintiff SPRINT-COM, Inc.'s ("Plaintiff" or "Sprint") response thereto (No. 14). In its Complaint, Plaintiff Sprint brings suit against Defendants ARPE and the Commonwealth of Puerto Rico for Defendants' decision to deny Sprint's application for a preliminary plan approval to install a telecommunications facility on the roof of a three-story building located in the town of Isabela, Puerto Rico. Plaintiff alleges that the telecommunications facility is necessary to provide seamless, reliable wireless telephone and other communication services to individuals living, working or traveling in and around Isabela. Plaintiff argues that Defendants' denial of the application is a violation of the Federal Communications Act ("FCA") because the denial is not supported by evidence from the administrative record, and the Federal Telecommunications Act ("FTA"), which states that local governments "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. 332(c)(7)(B)(i)(II). Sprint further alleges that ARPE's decision unreasonably discriminates against Sprint in violation of the FTA, giving other carriers a competitive edge in the area. Lastly, Sprint argues that Defendants have violated Section 2151 of the Puerto Rico Uniform Administrative Procedure Act ("LPAU") which grants all parties in an administrative case "the right to have the decision based on the record of the case." P.R. LAWS ANN. tit. 3, § 2151. Sprint requests injunctive and declaratory relief ordering Defendants to grant the application and issue all necessary permits to allow the installation and operation of the facility.

In Defendant ARPE's Motion to Dismiss, it argues that Sprint failed to exhaust administrative remedies before filing the instant Complaint, and therefore should be barred from seeking relief from this Court. In the alternative, Defendants argue that under the *Burford* abstention doctrine, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies, and as such this Court should abstain from interfering with ARPE's decision. Defendant ARPE's Motion to Dismiss is limited to these procedural arguments, and the Court will limit its analysis accordingly.

## II. *FACTUAL ALLEGATIONS*

Sprint is continually creating a network of individual but interconnected "cell sites," which are antenna facilities consisting of radio antennas installed on existing structures and attached to equipment that sends and receives radio signals from customers' portable wireless communications handsets and mobile telephones. The antennas feed low power radio signals received from wireless telephones through the attached electronic equipment and into telephone "land lines" so calls can be routed throughout the world. Each cell site serves a small geographic area and has height requirements that vary according to local topography, vegetation, and the configuration of existing structures. Installation of these cell sites fosters seamless coverage to Sprint's customers. If the cell sites are located too far apart, service may become unreliable. Sprint alleges that a significant service gap presently exists in Isabela, Puerto Rico, and that installing a telecommunications facility (the "Facility") on the roof of a three-story building in Isabela would eliminate much of the service gap.

Sprint submitted an application for the Facility to Defendants on February 1, 2006. Sprint negotiated and entered into a lease with the owner of the building where installation of the Facility is proposed. As part of its application, Sprint explained that the Facility complied with all applicable regulations and that, if

ARPE were to determine that a variance was required because the Facility would be installed in a building of less than five stories, Sprint had complied with all the requirements for the granting of such variance pursuant to ARPE's Regulation for Telecommunications Projects ("Regulation 26"). This included obtaining endorsement from the Puerto Rico Telecommunications Regulatory Board ("TRB").

A hearing was held on October 24, 2006, in the Justo Méndez Cabrera Amphitheater in Isabela (the "Hearing"). Sprint alleges it showed at the Hearing that the Facility complies with all applicable requirements under Regulation 26 and Law 89, P.R. Laws Ann. tit. 27, sec. 321 et seq. ("Law 89"). Notwithstanding Sprint's alleged compliance with the laws and regulations, the residents of the area voiced opposition to the installation of the antenna, citing possible health risks including interference with the functioning of pace makers, the attraction of lightning, and the development of skin conditions. The Municipality of Isabela also opposed the project, stating that the Municipality had presented a land use plan to TRB and, if approved, the Municipality would have the authority to issue or deny permits and would ban telecommunication facilities from urban areas.

On November 28, 2006, Sprint submitted a sworn statement attesting that the Facility would comply with all applicable FCC requirements. Shortly thereafter, on December 4, 2006, ARPE issued a resolution (the "Resolution") stating that Law 89 and Regulation 26 do not allow installation of telecommunications facilities in buildings of less than five stories and denying the variance requested. Sprint argues that in reality, as reflected in the Resolution, ARPE's denial of the application is based solely on the neighbors' opposition because of alleged health risks. The Resolution states as follows:

Even though, as evident at the public hearing, the proponent complied with the procedural requisites established for the request of a variance .... [i]n the balance of interests to be weighed, we believe that it is more important to address the concerns of the citizens than the economic benefits of the proponent.

Resolution No. 1–1, 10.

## III. LEGAL STANDARD FOR A MOTION TO DISMISS

According to the Supreme Court, a "court may dismiss a Complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 995, 152 L.Ed.2d 1 (2002). According to the First Circuit, a court must "treat all allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." *Rumford Pharmacy, Inc. v. City of East Providence,* 970 F.2d 996, 997 (1st Cir.1992). A complaint sufficiently raises a claim "even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations." *González–Pérez v. Hospital Interamericano De Medicina Avanzada,* 355 F.3d 1, 5 (1st Cir.2004). Under Federal Rule of Civil Procedure 8(f), "[a]ll pleadings shall be so construed as to do substantial justice."

## IV. ANALYSIS

### A. The Federal Telecommunications Act of 1996

The U.S. Congress passed the FTA in order to provide a "pro-competitive, deregulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunica-

tions and information technologies and services to all Americans by opening all telecommunications markets to competition · · ·" A & P S. Rep. 104–230. Section 704 of the FTA addresses limitations on the authority of local zoning boards states as follows:

(a)(7) PRESERVATION OF LOCAL ZONING AUTHORITY.—

(A) GENERAL AUTHORITY.—

Except as provided in this paragraph, nothing in this Act shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

47 U.S.C. § 332(a)(7). The statute then continues, highlighting the following limitations on State and local governments:

(B) LIMITATIONS.—

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

. . . . . .

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commissions's regulations concerning such emissions.

47 U.S.C. § 332(a)(7).

Thus, in passing the FTA, Congress explicitly held that under limited circumstances, the federal interest in wireless communications takes priority over state zoning authority. Specifically, when a state or local government treats "functionally equivalent" providers differently, and does so "unreasonably," the FTA steps in to preempt the state or local action. Plaintiff alleges that Defendants have violated the FTA by discriminating against Sprint in its efforts to install telecommunication facilities, by failing to base the Resolution on substantial evidence, and by considering alleged harmful effects of radio frequency emissions when ruling upon Sprint's permit application. The Court will now address whether these allegations are properly before it.

**B. Failure to Exhaust Administrative Remedies**

Regarding Plaintiff Sprint's application for a preliminary plan approval for its Facility, ARPE issued a Resolution stating that "in light of the aforementioned findings of fact, conclusions of law, and of the entire file, we proceed to issue the following: **We do not recommend the preliminary plan presented.**" Resolution No. 1–1, 9 (emphasis in original). Plaintiff Sprint is seeking review by this Court of ARPE's decision. The FTA explicitly creates a cause of action for appeal of a final action of a state or local government.

(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear

and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

47 U.S.C. § 332(c)(7)(B)(v).

The Resolution issued by ARPE, however, sets forth its own protocol for appeal. It states as follows:

The party adversely affected by a partial or final resolution or order may, within the term of **TWENTY (20) DAYS** from the date of the filing in the records of the notice, may [sic] file a motion for reconsideration with the Clerk of the corresponding office that issued the decision.... If the reconsideration is not filed, the interested party may opt to file an appeal directly with the Constructions and Lotifications Appeals Board....

Resolution No. 1–1, 10.

Sprint argues that ARPE's Resolution is a final agency action and is therefore appealable under the FTA in federal court. Defendant ARPE, on the other hand, argues that under the terms of the Resolution, Sprint has not exhausted administrative remedies and therefore should be barred from bringing the present action. In particular, Defendant argues Plaintiff was required under the ARPE Adjudicative Process Regulation, called Regulation No. 6435 of April 19, 2002 ("Regulation No. 6435") and the Puerto Rico Uniform Administrative Procedure Law to first seek judicial review of ARPE's Resolution in the State Court of Appeals. P.R. LAWS ANN. tit. 3, § 2171. The Court must determine: (1) whether the Resolution is in effect a "final action" by ARPE and therefore appealable, and (2) whether Sprint was required to first exhaust administrative remedies, including review by

the State Court of Appeals, before filing suit in federal court.

For a claim to be ripe under the FTA, there must be final action or failure to act by a State or local government. 47 U.S.C. § 332(c)(7)(B)(v). The FTA's legislative history describes final action as "final administrative action at the State or local government level so that a party can commence action under the subparagraph rather than waiting for the exhaustion of any independent State court remedy otherwise required." H.R.Rep. No. 458, 104th Congress, 2nd Session (07–09) (1996) [Conference Report]. If a petitioner once had the opportunity to pursue a then available administrative remedy, but did not pursue said remedy within the time it was available, the agency action may be final by the time a court decides whether to review the action. K. Davis & R. Pierce, Administrative Law Treatise, § 15:2, p. 306 (3d Ed.1994). In such a situation, however, a court still may decline to review the final agency action because of the petitioner's failure to have exhausted the administrative remedies that were previously available. *Id.*

In a case similar to the one at hand, the U.S. District Court for the Middle District of Florida held that the legislative history of the FTA indicates that "some adverse land use or regulatory decision by a local tribunal entitles a party to bring a cause of action pursuant to the Act." *APT Tampa/Orlando v. Orange County,* 1997 WL 33320573, 1997 U.S. Dist. LEXIS 22096, 14 (M.D.Fla.1997). The Supreme Court has generally held that an agency action is final where the order it issues is not a mere abstract declaration, but one which determines legal rights or obligations. *See Port of Boston Marine Terminal Asso. v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970); *Chicago v. United States,* 396 U.S. 162, 90

S.Ct. 309, 24 L.Ed.2d 340 (1969); *Pennsylvania R. Co. v. United States,* 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165 (1960); *Frozen Food Express v. United States,* 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910 (1956); *United States v. Interstate Commerce Com.,* 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451; *El Dorado Oil Works v. United States,* 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053 (1946); *Interstate Commerce Com. v. Hoboken M.R. Co.,* 320 U.S. 368, 64 S.Ct. 159, 88 L.Ed. 107 (1943); *National Broadcasting Co. v. United States,* 316 U.S. 447, 62 S.Ct. 1214, 86 L.Ed. 1586 (1942); *Columbia Broadcasting System v. United States,* 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); *United States v. Maher,* 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162 (1939); *Rochester Tel. Corp. v. United States,* 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147 (1939); *Powell v. United States,* 300 U.S. 276, 57 S.Ct. 470, 81 L.Ed. 643 (1937); *Alton R. Co. v. United States,* 287 U.S. 229, 53 S.Ct. 124, 77 L.Ed. 275 (1932); *United States v. Los Angeles & S.L.R. Co.,* 273 U.S. 299, 47 S.Ct. 413, 71 L.Ed. 651 (1927).

■ The Court holds that Defendant ARPE's Resolution denying Sprint's application for a preliminary plan approval constitutes a final action. Sprint requested and was denied a permit by ARPE. In the Resolution, ARPE wrote that a Hearing was conducted to consider Sprint's preliminary plan for the installation of a telecommunications facility. The finding of facts set forth in ARPE's Resolution was drawn from the testimony heard at the Hearing. Resolution No. 1–1, 1–2. The Resolution also includes a conclusions of law section in which ARPE declines to recommend Sprint's preliminary plan. Resolution No. 1–1, 9. The Resolution further states that "[t]he Manager of the Regulations and Permits Administration's Express Processing Center, in their meeting of November 27, 2006, **DENIES** the preliminary plan proposed according to the recommendation of the Hearing Officer." Resolution No. 1–1, 10–11 (emphasis in original). The Resolution then sets forth protocol for the party adversely affected "by a partial or final resolution or order." Resolution No. 1–1, 10. Because the Resolution disposes of Sprint's plan entirely, it is not a partial resolution. Rather, the Resolution is a final resolution or action because it effectively determines Sprint's legal rights or obligations by stating that its preliminary plan is denied and therefore it may not construct its proposed tower.

Further, Plaintiff Sprint is not required to first seek review of the Resolution in the State Court of Appeals. Exhaustion of administrative remedies, by its very terms, does not require judicial review. *See McKart v. United States,* 395 U.S. 185, 194, 89 S.Ct. 1657, 23 L.Ed.2d 194 ("The courts ordinarily should not interfere with an agency until it has completed its action, or else has clearly exceeded its jurisdiction."); *Myers et al. v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938) ("No one is entitled to judicial review for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."). Apart from judicial review, ARPE provided protocol in its Resolution for Sprint to seek administrative reconsideration, however a party's request for reconsideration is not a requirement for an agency's decision to be final and ripe for judicial review. P.R. LAWS ANN. tit. 3, §§ 2164, 2165.

## C. Applicability of the *Burford* Abstention

■ Defendant ARPE argues that the Court should abstain from interfering in the instant dispute under the *Burford* abstention doctrine. Under the abstention doctrine set forth in *Burford v. Sun Oil Co.,* 319 U.S. 315, 333–34, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and its progeny, the

U.S. Supreme Court has held that a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies when: 1) there are difficult policy problems of substantial public import whose importance transcends the result in the case then at bar; or 2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial state concern. *See New Orleans Pub. Serv., Inc. (NOPSI) v. New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1988) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

*Burford* abstention, then, seeks to "prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative solution." *Pub. Serv. Co. of New Hampshire v. Patch,* 167 F.3d 15, 24 (1st Cir.1998); *Wal–Mart Stores, Inc. v. Rodríguez,* 238 F.Supp.2d 423, 426 (D.P.R. 2003). It does not apply *per se* every time there is a complex state administrative proceeding involving state public policy. *Id.* Neither does it apply every time there is a "potential for conflict" with the state regulatory law or policy. *NOPSI,* 491 U.S. at 362, 109 S.Ct. 2506. Federal courts should not abstain under the *Burford* doctrine when there are "predominating federal issues that do not require resolution of doubtful questions of law and policy." *Patch,* 167 F.3d at 24; *Wal–Mart Stores, Inc.,* 238 F.Supp.2d at 426. Further, the First Circuit has held that "[d]ecisions in this circuit, as elsewhere, have reserved the *Burford* type of abstention for the relatively rare case where the equities strongly point in the direction of litiga-

tion exclusively in the state forum." *Construction Aggregates Corp. v. Rivera de Vicenty,* 573 F.2d 86, 93 (1978).

Plaintiffs brought the case at hand alleging violations of federal statutes regulating the telecommunications industry. In fact, the FTA was created especially to eliminate the type of violations that Plaintiff is alleging. In light of the above case law indicating the *Burford* abstention is reserved for complex state administrative proceedings involving state public policy and is used only in rare cases, and because the installation of telecommunications facilities are clearly regulated by the FTC, the Court will not decline jurisdiction based on the *Burford* abstention doctrine.

## IV. CONCLUSION

For the reasons stated herein, Defendant ARPE's Motion to Dismiss (**No. 9**) is **DENIED.**

**IT IS SO ORDERED.**