**Carlos ALVARADO, et al., Plaintiffs**

v.

**MORGAN STANLEY DEAN WITTER, INC., et al., Defendants**

**No. CIV. 05–1149(JP).**

United States District Court, D. Puerto Rico.

Aug. 30, 2006.

*USM Corp.*, 420 Mass. at 868, 652 N.E.2d 613.

Alice Net–Carlo, Esq., Dorado, for Plaintiffs.

Heidi E. Rodríguez–Benítez, Esq., Néstor Méndez–Gómez, Esq., Pietrantoni, Méndez & Alvarez, San Juan, for Defendants.

## OPINION AND ORDER

PIERAS, Senior District Judge.

The plaintiffs bring federal claims of securities fraud against Morgan Stanley Dean Witter, alleging that a Morgan Stanley broker sold them securities with the intent to misappropriate the invested funds. Morgan Stanley moves to dismiss the complaint on the grounds that the plaintiffs failed to state a claim under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and under Rule 10b–5, promulgated by the Securities Exchange Commission. The court denies the motion, and holds that the plaintiffs stated claims for agency liability under Section 10(b) and Rule 10b–5, and for controlling person liability under Section 20(a).

## I. FACTUAL ALLEGATIONS

Carlos Soto was employed by Morgan Stanley as a financial advisor and broker, and occupied the position of First Vice President of Investments at Morgan Stanley's San Juan branch. In 2001 the plaintiffs, a married couple, followed Soto's advice to invest in a GNMA fund through Morgan Stanley. Soto told the plaintiffs the fund was a low risk investment, and would yield an eight percent annual return. He also told them the GNMA investment account would activate a check-

ing account at Morgan Stanley, into which the couple could deposit funds. The plaintiffs decided to chose to invest in the GNMA fund, because of Morgan Stanley's "good name and standing in the industry." They assumed Soto was trustworthy, and that Morgan Stanley carefully screened, and supervised its brokers. The plaintiffs told Soto that the investment was for the purpose of creating a college fund for their daughters. On May 9, 2001, the plaintiffs visited Soto at his office at Morgan Stanley, and handed him a check for $1,015,000.00 made payable to Morgan Stanley. The plaintiffs instructed Soto to invest $1,000,000.00 in the GNMA fund, and to deposit the remaining $15,000.00 in the checking account which would be activated with the GNMA investment. Soto told the plaintiffs that the interest earned on the GNMA fund would be deposited into the checking account each month, and that they would receive a receipt of their investment by mail. The check was deposited into a Morgan Stanley account at Bank of America. The plaintiffs received by mail a document titled "Statement of Your Account" with the Morgan Stanley logo, which indicated they had invested $1,000,000.00 in GNMA securities.

After the plaintiffs' made their investment, Soto commingled the money deposited by the plaintiffs with his own personal bank accounts and business entities, and manipulated the Morgan Stanley monthly statements to avoid detection. The plaintiffs' monthly statements from Morgan Stanley indicated that from September 13, 2002, until February, 2004, they received monthly deposits into their checking account in the amount of $4,777.53. The monthly statements did not indicate what persons or entities made deposits into the plaintiffs' checking account, and the plaintiffs believed these deposits represented interest on their GNMA investment. However, at least once per month Soto

transferred funds from his personal accounts into the plaintiffs' Morgan Stanley checking account in order to cover the plaintiffs' expected interest payment. Soto engaged in the same conduct with other clients' accounts, and established an independent accounting system which indicated the amount of monies diverted from client accounts. His actions finally came to light on February 9, 2004, when he confessed to Morgan Stanley personnel that he had engaged in a scheme to divert Morgan Stanley investors' money for personal use and to engage in risky and speculative trading on his own behalf. Morgan Stanley eventually paid a $6 million fine levied by the New York Stock Exchange for their failures to supervise Soto, monitor customer accounts, and maintain accurate records.

The plaintiffs allege Soto's and Morgan Stanley's actions caused them to lose over $650,000 in principal and interest on their GNMA investment, and also caused them to incur emotional damages. They claim Morgan Stanley is liable for securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and under SEC Rule 10b–5, and for negligence, and breach of fiduciary duty under Article 1803 of the Puerto Rico Constitution.

## II. ANALYSIS

When considering a motion to dismiss, the district court must "assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability." *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir.2003). The court is free to disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." *In re Credit Suisse First Boston Corp.*, 431 F.3d 36, 45 (1st Cir.2005). In addition, a "complaint sufficiently raises a claim even if it points to no legal theory or even if it

points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations." *González–Pérez v. Hospital Interamericano De Medicina Avanzada,* 355 F.3d 1, 5 (1st Cir.2004).

### A. Section 10(b)

 The elements of a claim under Section 10(b) are that the defendant (1) made a material misrepresentation or omission, (2) with scienter, (3) in connection with the purchase or sale of a security, (4) on which the plaintiff relied, (5) to his or her detriment. *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 341–342, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). To establish scienter a plaintiff must show that the defendant's conduct evinced either a conscious intent to commit the alleged fraud or a high degree of recklessness in connection with the fraud. *In re Credit Suisse First Boston Corp.,* 431 F.3d at 48 n. 5. To satisfy the final "loss" element, a plaintiff must show both economic loss and loss causation, *i.e.* a causal connection between the material misrepresentation or omission and the loss.

To survive a motion to dismiss a Section 10(b) complaint must satisfy the pleading standards of the Private Securities Litigation Reform Act (PSLRA). With respect to the element of scienter, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Where a plaintiff alleges the defendant omitted to state material facts necessary to make statements made not misleading, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the

statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). The PSLRA's pleading standard is "congruent and consistent" with the First Circuit's pre-existing Rule 9(b) pleading standards. *In re Stone & Webster, Inc., Securities Litigation,* 414 F.3d 187, 195 (1st Cir.2005). Determining whether a complaint satisfies the PSLRA pleading requirements requires the court to perform "an individualized assessment that sweeps before it the totality of the facts in a given case." *In re Credit Suisse First Boston Corp.,* 431 F.3d at 46.

The plaintiffs allege that Carlos Soto, while working as a broker and advisor for Morgan Stanley, sold them GNMA securities with the undisclosed intent to use the investment and the resulting income for his own purposes. In *SEC v. Zandford,* the Supreme Court held that when a broker sells securities with the secret intent to misappropriate the funds, the conduct constitutes fraud in connection with the purchase of securities in violation of Section 10(b). *SEC v. Zandford,* 535 U.S. 813, 820 122 S.Ct. 1899, 1903 (2002). Morgan Stanley concedes that the plaintiffs allege sufficient facts to state a Section 10(b) claim against Carlos Soto, under which they could recover if Soto were still a defendant in this case,[1] No. 20 at 8, but argues that it could not be held liable under Section 10(b) for the alleged material misrepresentations and omissions made by Carlos Soto.

The First Circuit adopted agency liability under Section 10(b) in *In re Atlantic Financial Management, Inc.,* 784 F.2d 29, 35 (1st Cir.1986), cert. denied, 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 877 (1987). Under the First Circuit's decision

---

1. Claims against Carlos Soto and his wholly owned entities were voluntarily dismissed.

in that case, a principal could be liable under Section 10(b) and Rule 10b–5 for actions within the agent's apparent authority. *Id.*, at 31–32. The court concluded that Section 20(a), 15 U.S.C. § 78t(a), which imposes joint and several liability on controlling persons, did not foreclose agency liability. *Id.*, at 32.

The issue before this court is whether the First Circuit's decision in *In re Atlantic Financial Management, Inc.* can survive an intervening Supreme Court decision. In *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the Supreme Court held that private plaintiffs could not maintain aiding and abetting claims under Section 10(b) and Rule 10b–5. The Supreme Court reasoned that aiding and abetting another's fraud is outside the scope of conduct prohibited by Section 10(b), which only bars the making of a material misstatement or omission, and the commission of a manipulative act. *Id.*, at 177, 114 S.Ct. 1439. The court also stated that express causes of action in the 1933 and 1934 Acts did not provide for aiding and abetting liability, and that allowing aiding and abetting liability would impose liability where the element of reliance is not present. *Id.*, at 180, 114 S.Ct. 1439.

The court stated in *Central Bank* that imposition of control person liability under Section 20(a) indicated Congress did not intend to impose other forms of secondary liability,

> Aiding and abetting is a method by which courts create secondary liability in persons other than the violator of the statute. The fact that Congress chose to impose some forms of secondary liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere.

*Id.*, at 184, 114 S.Ct. 1439 (internal citation and quotation omitted). The dissenting justices stated that due to this language in the majority opinion, other forms of secondary liability "appear unlikely to survive the Court's decision." *Id.*, at 200 n. 12, 114 S.Ct. 1439 (Stevens, J., dissenting). The First Circuit has not ruled on the issue, but in a case arising under a state's blue sky laws cited the dissenting opinion, and stated that the *Central Bank* decision "cast[s] some doubt on *Atlantic Financial.*" *Dinco v. Dylex Limited*, 111 F.3d 964, 968 (1st Cir.1997).

■ This court holds that agency liability under Section 10(b) survives *Central Bank.* The three Circuits that have ruled on the issue since *Central Bank* upheld Section 10(b) liability of principals for the acts of their agents within the scope of their apparent authority. *See Adams v. Kinder–Morgan, Inc.*, 340 F.3d 1083, 1107 (10th Cir.2003) (scienter of senior controlling officers of a corporation may be attributed to the corporation itself to establish liability as a primary violator of Section 10(b) and Rule 10b–5 when those officers were acting within the scope of their apparent authority); *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 100–101 (2d Cir.2001); *American Telephone and Telegraph Company v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1432 (3d Cir.1994).

The *Central Bank* court was concerned with broadening the range of conduct that would give rise to liability under Rule 10b–5 beyond that proscribed by Section 10(b). The court held that when determining the elements for private causes of action under 10b–5, courts must look to the text of Section 10(b). *Id.*, at 178, 114 S.Ct. 1439. Further inquiry is only necessary if the text does not resolve the issue, at which stage courts must infer "how the 1934 Congress would have addressed the issue

had the 10b–5 action been included as an express provision in the 1934 Act," using as models the express causes of action in the securities acts. *Id.*, at 178, 114 S.Ct. 1439. The court determined that aiding and abetting liability would extend liability to those "who do not engage in the proscribed activities at all, but who give a degree of aid to those who do," *Id.*, at 176, and emphasized, "We cannot amend the statute to create liability for acts that are not themselves manipulative or deceptive within the meaning of the statute," *Id.*, at 277–278. The Congressional intent behind Section 20(a), the court stated, is one of several factors that would guide its analysis only if the language of Section 10(b) itself did not compel its decision. *Id.*, at 178 ("Because this case concerns the conduct prohibited by § 10(b), the statute itself resolves the case, but even if it did not, we would reach the same result.").

Like the issue of aiding and abetting liability, the issue of agency liability can be resolved with reference to the statute itself, without the need for further inquiry. Section 10(b) provides, "It shall be unlawful for *any person*, directly or indirectly, ... [t]o use or employ, in connection with the purchase or sale of any security... any manipulative or deceptive device." 15 U.S.C. § 78j (emphasis added). The 1934 Act, as amended, defines "person" as "a natural person, company, government, or political subdivision, agency, or instrumentality of a government." 15 U.S.C. § 78c(a)(9). In order for a company to be liable as a "person" under Section 10(b), agency liability must be recognized, because an entity can only act through its agents. *E.g. Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 548, 111 S.Ct. 922, 931, 112 L.Ed.2d 1140 (1991). Unlike courts imposing aiding and abetting liability, courts imposing liability on principals for the acts of their agents are not expanding the category of conduct proscribed by the relevant statute.

The *Central Bank* court itself anticipated that despite the elimination of aiding and abetting liability, entities could still be liable under Section 10(b),

> Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b–5, assuming *all* of the requirements for primary liability under Rule 10b–5 are met.

*Id.*, at 191 (emphasis in original), and that in many Section 10(b) cases there would be multiple violators. *Id.*, at 191.

After *Central Bank* the Supreme Court declined an opportunity to reject agency liability in *Wharf Holdings Limited v. United International Holdings, Inc.*, 532 U.S. 588, 121 S.Ct. 1776, 149 L.Ed.2d 845. In that case, Peter Woo, the chairman of Wharf Holdings, instructed Stephen Ng, a managing director, to negotiate a contract with United International Holdings. Ng informed Woo that United International Holdings wanted as part of the agreement an option to purchase shares of Wharf. Woo informed Ng that Wharf would not agree to the option. Ng defied his instructions and granted the option. The court implicitly assumed Ng's actions could be imputed to Wharf, and held that the sale of the option with the secret intent not to honor it violated Section 10(b) and Rule 10b–5. Given the opportunity to reject agency liability, as it rejected aiding and abetting liability, the Supreme Court declined to do so and affirmed liability of a corporate principal for the acts of its

agent.[2]

The court rejects Morgan Stanley's argument that agency liability is no longer available under Section 10(b) and Rule 10b–5. Because Morgan Stanley makes no other arguments with respect to these claims, the defendant's motion to dismiss them is denied.

### B. *Section 20(a)*

Section 20(a) imposes liability on controlling persons for violations by the controlled person or entity. The established elements of Section 20(a) are (1) an underlying violation of the same chapter of securities laws by a controlled person, and (2) control of the primary violator by the defendant. *See* 15 U.S.C. § 78t(a). Section 20(a) does not obligate plaintiffs to plead or prove scienter. *In re Stone & Webster, Inc., Securities Litigation*, 414 F.3d 187, 194 (1st Cir.2005). Rather, the defendant can rebut liability by proving that he or she "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." *See* 15 U.S.C. § 78t(a).

Morgan Stanley does not dispute that the plaintiffs pled sufficient facts to state a Section 20(a) claim with respect to the above mentioned elements, but argues the court should adopt the requirement that plaintiffs plead and prove "culpable participation" on the part of the controlling person. Some circuits have recognized this element. *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir.1996) (citing *Gordon v. Burr*, 506 F.2d 1080, 1085 (2d Cir.1974); *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 890 (3d Cir.1975). Other circuits have expressly rejected the element. *See Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir.1990); *Harrison v. Dean Witter Reynolds, Inc.*, 79

F.3d 609, 614 (7th Cir.1996). On multiple occasions the First Circuit has declined to decide whether to adopt the "culpable participation" element. *See In re Stone & Webster, Inc., Securities Litigation*, 414 F.3d at 194, n. 4; *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir.2002).

 It is not necessary at this time to decide whether to adopt the requirement that the plaintiffs prove Morgan Stanley was a culpable participant, because even if such requirement existed, the plaintiffs sufficiently pled it. Section 20(a) provides that a "controlling person" is liable "unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78(t)(a). The seminal case adopting the "culpable participant" requirement, equates culpable participation with lack of good faith. *See Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir.1973). Courts that do not adopt the "culpable participant" element hold that good faith is an affirmative defense to liability under Section 20(a). *See e.g. Adams v. Kinder–Morgan, Inc.*, 340 F.3d at 1109, note 5. Good faith in this context requires a reasonable system of supervision, enforced with reasonable diligence. *Harrison*, 79 F.3d at 615. In this case, the plaintiffs sufficiently alleged that Morgan Stanley failed to supervise Carlos Soto, and that its failure caused their damages. While adopting the "culpable participant" element would implicate burden of proof issues, the resolution of these issues is not necessary at this stage in the litigation. It suffices that relief is possible under a set of facts consistent with the factual allegations. Therefore, defendant's motion to dismiss the Section 20(a) claims is denied.

---

**2.** It is worth noting that Justice Breyer, author of the opinion in *Wharf Holdings*, also wrote the First Circuit's decision in *In re Atlantic Financial Management, Inc.*

## III. *CONCLUSION*

The court denies Morgan Stanley's motion to dismiss the federal securities fraud claims primary liability under Section 10(b) and Rule 10b–5, and for controlling person liability under Section 20(a). Pursuant to Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure Morgan Stanley must answer the complaint on or before ten days from entry of this order.

**IT IS SO ORDERED.**